1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ELEANORADIANNE R.,[1]           ) Case No. EDCV 20-1080 (JPR)
                               )
            Plaintiff,         )
                               )  **MEMORANDUM DECISION AND ORDER**
        v.                     )  **REVERSING COMMISSIONER**
                               )
ANDREW SAUL, Commissioner      )
of Social Security,            )
                               )
            Defendant.         )
                               )

**I.   PROCEEDINGS**

    Plaintiff seeks review of the Commissioner's final decision
denying her applications for Social Security disability insurance
benefits ("DIB") and supplemental security income benefits
("SSI").  The matter is before the Court on the parties' Joint
Stipulation, filed April 2, 2021, which the Court has taken under
submission without oral argument.  For the reasons discussed
below, the Commissioner's decision is reversed and this matter is

---

    [1] Plaintiff's name is partially redacted in line with
Federal Rule of Civil Procedure 5.2(c)(2)(B) and the
recommendation of the Committee on Court Administration and Case
Management of the Judicial Conference of the United States.

1

1  remanded for further proceedings.

2  **II.  BACKGROUND**

3      Plaintiff was born in 1969.  (Administrative Record ("AR")
4  222, 226.)  She completed high school and worked as a cashier,
5  housekeeper, and merchandiser.  (AR 270.)

6      On August 3, 2015, Plaintiff applied for DIB and SSI,
7  alleging that she had been unable to work since June 5, 2015,
8  because she had "problems with [her] feet" and "blockage of [her]
9  legs" and couldn't stand or walk for long.  (AR 269; see also AR
10  222-32.)  After her applications were denied initially (AR 146-
11  50) and on reconsideration (AR 153-58), she requested a hearing
12  before an Administrative Law Judge (AR 160, 162).  One was held
13  on February 21, 2019, at which Plaintiff, who was not represented
14  by counsel, testified, as did a vocational expert.  (See AR 39-
15  68.)  In a written decision issued March 21, 2019, the ALJ found
16  Plaintiff not disabled.  (AR 20-31.)  She sought Appeals Council
17  review (AR 218-19), which was denied on March 31, 2020 (AR 1-6).
18  This action followed.

19  **III. STANDARD OF REVIEW**

20      Under 42 U.S.C. § 405(g), a district court may review the
21  Commissioner's decision to deny benefits.  The ALJ's findings and
22  decision should be upheld if they are free of legal error and
23  supported by substantial evidence based on the record as a whole.
24  See Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v.
25  Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence
26  means such evidence as a reasonable person might accept as
27  adequate to support a conclusion.  Richardson, 402 U.S. at 401;
28  Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It

is "more than a mere scintilla, but less than a preponderance." Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

## IV.   THE EVALUATION OF DISABILITY

People are "disabled" for Social Security purposes if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   The Five-Step Evaluation Process

An ALJ follows a five-step sequential evaluation process to assess whether someone is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied.  §§ 404.1520(a)(4)(ii) & (c), 416.920(a)(4)(ii) & (c).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  §§ 404.1520(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d).

If the claimant's impairment or combination of impairments does not meet or equal one in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[2] to perform her past work; if so, she is not disabled and the claim must be denied.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The claimant has the burden of proving she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets that

---

[2] RFC is what a claimant can do despite existing exertional and nonexertional limitations.  §§ 404.1545(a)(1), 416.945(a)(1); see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). The Commissioner assesses the claimant's RFC between steps three and four.  Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing § 416.920(a)(4)).

4

burden, a prima facie case of disability is established.  <u>Id.</u>

     If that happens or if the claimant has no past relevant work, the Commissioner bears the burden of showing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy, the fifth and final step of the sequential analysis. §§ 404.1520(a)(4)(v), 404.1560(b), 416.920(a)(4)(v), 416.960(b).

          B.   <u>The ALJ's Application of the Five-Step Process</u>

     At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 5, 2015, the alleged onset date; her date last insured was December 31, 2017.  (AR 23.)  At step two, she determined that Plaintiff had severe impairments of cirrhosis, scoliosis, degenerative disc disease of the cervical spine, "lumbar radiculopathy affecting the right L4 and L5 nerve roots," "distal polyneuropathy,"[3] "history of left cerebral subarachnoid and extra-axial hemorrhage[4] and hematoma," "cognitive disorder secondary to subarachnoid brain hemorrhage," and "history of alcohol abuse."  (<u>Id.</u>)

     At step three, she found that Plaintiff's impairments did

_____

     [3] Polyneuropathy results from peripheral-nerve damage.  <u>What Is Polyneuropathy?</u>, Healthline, https://www.healthline.com/health/polyneuropathy (last visited June 11, 2021).  Distal polyneuropathy causes burning or tingling sensations, especially in the feet and hands.  (<u>Id.</u>)

     [4] Extra-axial hemorrhage is bleeding that occurs within the skull but outside of the brain tissue.  <u>Intracranial Hemorrhage</u>, Wikipedia, https://en.wikipedia.org/wiki/Intracranial_hemorrhage (last visited June 11, 2021).  One type, subarachnoid hemorrhage, is bleeding in the space between the brain and the surrounding membrane.  <u>Subarachnoid Hemorrhage</u>, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/subarachnoid-hemorrhage/symptoms-causes/syc-20361009 (last visited June 11, 2021).

not meet or equal any of the impairments in the Listing. (AR 23-24.)  At step four, she determined that Plaintiff had the RFC to perform light work

> except she can stand and walk four hours, and she needs
> an assistive device for long distance (more than 100
> feet) ambulation to avoid falls.  She is limited to
> occasional use of bilateral lower extremities (foot
> pedals), occasionally climb ramps and stairs, cannot walk
> on uneven terrain, occasionally crouch, crawl, kneel, and
> cannot work at unprotected heights and cannot climb
> ladders, ropes of [sic] scaffolds.  She can frequently
> reach, handle, finger, and feel.  She is limited to
> simple, routine tasks, and occasional interaction with
> supervisors, coworkers and the public.

(AR 24.)  The ALJ found that Plaintiff was unable to perform any past relevant work, but she could work at several jobs "exist[ing] in significant numbers in the national economy." (AR 29.)  Accordingly, she found her not disabled.  (AR 30-31.)

**V.  DISCUSSION**

Plaintiff alleges that the ALJ erred in evaluating her subjective symptom statements and assessing the opinions of treating physician Robert Kounang.  (See J. Stip. at 4-14, 20-26.)  As discussed below, the ALJ erred by failing to assign any specific weight to Dr. Kounang's opinions or address his findings that Plaintiff was limited to sedentary work and was unable to climb stairs, walk "efficiently/long distance," or sit "long term." (AR 731.)  The omission was not harmless because some of the doctor's findings conflicted with the RFC.  Accordingly,

1  remand is necessary.

2      A.  <u>The ALJ Erred in Failing to Assign Any Particular</u>

3          <u>Weight to Dr. Kounang's Opinions or Explain Why She Did</u>

4          <u>Not Incorporate Them into the RFC</u>

5          1.  <u>Relevant background</u>

6      On April 13, 2017, Dr. Kounang, who specialized in "physical

7  medicine and rehabilitation" and had been treating Plaintiff

8  since March 2016, conducted a "Physical Disability Evaluation" of

9  her.  (AR 419-20, 730-31.)  She complained that she was "unable

10  to stand/climb stairs" or walk "long distance" because of

11  polyneuropathy and a "[c]ompression fracture" of a vertebra.

12  (AR 730.)  She reported that she had had a stroke in 2016 and

13  that she was unable to participate in physical therapy.  (<u>Id.</u>)

14      During her examination, Plaintiff's upper-extremity strength

15  was "3/5" on the right and "3+/5" on the left, her lower-

16  extremity strength was "3/5" bilaterally, she had decreased

17  sensation bilaterally, and she walked with a slow gait.  (AR

18  730.)  Dr. Kounang opined that her condition did "not allow her

19  to walk efficiently/long distance," she was unable to climb

20  stairs or sit "long term," and she was "limited to sedentary

21  work."  (AR 731.)  The ALJ did not assign any particular weight

22  to — or even mention — Dr. Kounang's opinions.  (AR 27-29.)

23          2.  <u>Applicable law</u>

24      Three types of physicians may offer opinions in Social

25  Security cases: those who directly treated the plaintiff, those

26  who examined but did not treat the plaintiff, and those who did

27  neither.  <u>See</u> <u>Lester</u>, 81 F.3d at 830.  A treating physician's

28  opinion is generally entitled to more weight than an examining

physician's, and an examining physician's opinion is generally entitled to more weight than a nonexamining physician's.  Id.; see §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2).[5]

The ALJ may discount a physician's opinion regardless of whether it is contradicted.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); see also Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008).  When a doctor's opinion is not contradicted by other medical-opinion evidence, however, it may be rejected only for a "clear and convincing" reason.  Magallanes, 881 F.2d at 751 (citations omitted); Carmickle, 533 F.3d at 1164 (citing Lester, 81 F.3d at 830-31).  When it is contradicted, the ALJ need provide only a "specific and legitimate" reason for discounting it.  Carmickle, 533 F.3d at 1164 (citing Lester, 81 F.3d at 830-31).  The weight given a doctor's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, among other things.  See §§ 404.1527(c), 416.927(c); see also Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (factors in assessing physician's opinion include length, nature, and extent of treatment relationship and frequency of examination).

In evaluating doctors' opinions, an ALJ must state what weight she has given each opinion and explain why.  See §§ 404.1527(c)(2), 416.927(c)(2) (requiring ALJ to "give good

---

[5] For claims filed on or after March 27, 2017, the rules in §§ 404.1520c and 416.920c (not §§ 404.1527 and 416.927) apply. See §§ 404.1520c, 416.920c (evaluating opinion evidence for claims filed on or after Mar. 27, 2017).  Plaintiff's claims were filed before March 27, 2017, however, and the Court therefore analyzes them under former §§ 404.1527 and 416.927.

8

reasons" for rejecting treating doctor's opinion); SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996) (noting that ALJ must "give good reasons . . . for the weight given" to treating doctors' opinions); Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (as amended) ("Under 96-2p, reasons must be 'sufficiently specific to make clear . . . the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'").  An ALJ errs when she "does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).

### 3.  Analysis

In light of the ALJ's failure to specifically assign any particular weight to Dr. Kounang's opinions — much less "give good reasons" for apparently rejecting (or not considering) portions of them — the ALJ erred.[6]  Id.; see also Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015) (finding reversible error when ALJ didn't "even mention" treating doctor or his notes); Jose Luis V.H. v. Saul, No. EDCV 18-2618-KS, 2020 WL 247315, at *4-5 (C.D. Cal. Jan. 16, 2020) (finding reversible

---

[6] Defendant acknowledges that the ALJ never addressed Dr. Kounang's opinions but argues that she "implicitly rejected" them by noting that treating doctor Julia Black had found Plaintiff not disabled and that Plaintiff then went to another doctor — "apparently, Dr. Kounang — who would fill out disability papers for her." (J. Stip. at 25.)  But although the ALJ's decision notes that Dr. Black advised Plaintiff to get a second opinion and that Plaintiff "left mad and angry" and stated that she was "not coming back" (AR 28 (citing AR 441); see also AR 27), it does not even suggest that the ALJ rejected Dr. Kounang's opinions because they resulted from forum shopping.

error when ALJ failed to specifically mention doctor's opinion or give it any weight).

The error was not harmless.  Dr. Kounang's statements that Plaintiff was unable to climb stairs or sit "long term" and was limited to sedentary work (AR 731) conflicted with the RFC, which contained no sitting limitation and allowed occasional stair climbing and a range of light work (AR 24).  And it is unclear whether Dr. Kounang's opinion that Plaintiff could not walk "efficiently/long distance" (AR 731) conflicted with the RFC's "stand and walk four hours" limitation (AR 24).  The VE was not asked at the hearing whether any available work with those additional limitations existed.  Although the VE testified that certain sedentary jobs were available with Plaintiff's RFC (AR 64), he was not asked whether sedentary work with Dr. Kounang's additional opined limitations would eliminate all work.  Thus, the Court cannot conclude that the ALJ would have reached the same result had she considered and credited Dr. Kounang's opinions.  Marsh, 792 F.3d at 1173 (ALJ's failure to discuss treating doctor's opinion was not harmless because ALJ did not consider doctor's statement that condition rendered plaintiff "pretty much nonfunctional").

B.    Remand for Further Proceedings Is Appropriate

When an ALJ errs, the Court "ordinarily must remand for further proceedings."  Leon v. Berryhill, 880 F.3d 1041, 1045 (9th Cir. 2017) (as amended Jan. 25, 2018); see also Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended).  The Court has discretion to do so or to award benefits under the "credit as true" rule.  Leon, 880 F.3d at 1044 (citation

10

1
2
3
4
5
6
7
8

omitted).  "[A] direct award of benefits was intended as a rare and prophylactic exception to the ordinary remand rule[.]"  Id. at 1045.  The "decision of whether to remand for further proceedings turns upon the likely utility of such proceedings," Harman, 211 F.3d at 1179, and when an "ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency," Leon, 880 F.3d at 1045 (citation omitted).

9
10
11
12
13
14
15
16
17
18
19

Here, further administrative proceedings would serve the useful purpose of allowing the ALJ to give proper consideration to Dr. Kounang's opinions.  In addition, when a court has "serious doubt" about whether a plaintiff is disabled, remand for further proceedings is appropriate.  See Garrison, 759 F.3d at 1021.  Dr. Kounang's evaluation contained little explanation for the opined limitations, which were contradicted by the other opinion evidence summarized by the ALJ (AR 27-29), suggesting that Plaintiff could perform a range of light work.  Moreover, as Defendant points out (J. Stip. at 28 n.8), Plaintiff's drug and alcohol abuse may have contributed to her impairments.[7]  Thus,

20
21
22
23
24
25
26
27
28

[7] Under 42 U.S.C. § 423(d)(2)(C), a claimant "shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." Should the ALJ preliminarily find Plaintiff disabled on remand, she should consider whether § 423(d)(2)(C) applies based on her finding that Plaintiff suffered from a "history of alcohol abuse." (AR 23.)  See §§ 404.1535, 416.935; Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001) (discussing alcohol abuse in context of § 423(d)(2)(C)).  Although the ALJ also noted Plaintiff's tobacco abuse (AR 25), it is less clear that tobacco counts as a drug for purposes of § 423(d)(2)(C).  Cf. Bean v. Astrue, No. 08-0978-CV-W-ODS., 2009 WL 4430062, at *3 (W.D. Mo. (continued...)

remand is appropriate.  If the ALJ chooses to discount Dr. Kounang's opinions on remand, she can then provide an adequate discussion of the reasons why.

Plaintiff also challenges the ALJ's evaluation of her subjective symptom statements.  (J. Stip. at 22-25 & 26.)  The ALJ should reevaluate those once she has properly considered Dr. Kounang's opinions, so the Court does not address that argument. See Negrette v. Astrue, No. EDCV 08-0737 RNB., 2009 WL 2208088, at *2 (C.D. Cal. July 21, 2009) (finding it unnecessary to address further disputed issues when court found that ALJ failed to properly consider treating doctor's opinion and lay-witness testimony).

**VI.  CONCLUSION**

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g), IT IS ORDERED that judgment be entered in Plaintiff's favor and that this action be remanded for further proceedings consistent with this Memorandum Decision.


DATED: June 14, 2021

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[7] (...continued)
Nov. 24, 2009) (discussing tobacco in context of § 423(d)(2)(C)).

12